1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

GULF INSURANCE COMPANY,

11
                                    NO. CIV. S-08-209 LKK/JFM
12          Plaintiff,

13      v.
                                         O R D E R
14  FIRST BANK and DOES 1
    through 50, inclusive,
15
            Defendants.
16  _____/

17      Plaintiff Gulf Insurance has brought suit against defendant

18  First Bank alleging that defendant has wrongfully refused to

19  disburse funds it agreed to set aside for plaintiff.  Plaintiff has

20  brought claims for breach of contract, conversion, breach of

21  fiduciary duty, and subrogation.  Pending before the court are

22  defendant's motions to dismiss.  For the reasons explained below,

23  the motions are granted in part and denied in part, and leave to

24  amend is granted.

25  ////

26  ////

                                   1

1                          **I. Background**[1]

2        Plaintiff Gulf Insurance acted as the surety on an improvement

3   bond for the construction of a 114-lot subdivision in Auburn,

4   California planned by Baldwin Ranch.  FAC ¶¶ 5-6.  The county in

5   which the subdivision was to be located required this bond in order

6   to guarantee the construction of certain improvements.  To induce

7   Gulf Insurance to act as surety on the bond, Baldwin Ranch

8   requested that defendant First Bank, which had provided financing

9   for the construction of the subdivision, set aside funds for Gulf

10  Insurance.  FAC ¶ 9.  In the event that Baldwin Ranch failed to

11  complete the improvements, the agreement -- memorialized in a

12  September 25, 2002 "set aside letter" -- required First Bank to

13  provide Gulf Insurance with the undisbursed loan funds so that it

14  could complete the improvements.  FAC ¶ 6.  As of the date of the

15  set aside letter, $3.9 million dollars remained undisbursed.  FAC

16  ¶ 11.

17       Baldwin Ranch subsequently defaulted on certain performance

18  and payment obligations.  FAC ¶ 19.  Gulf Insurance alleges that

19  it is now entitled to the undisbursed balance of the set aside

20  funds.  FAC ¶ 22.  On September 26, 2007, Gulf Insurance requested

21  that First Bank provide an accounting of all accounts and loans for

22  Baldwin Ranch.  FAC ¶ 25.  As of April 21, 2008 (the date of the

23  first amended complaint's filing), Gulf Insurance had not received

24  _____

25       [1] The "background" is derived from the plaintiff's complaint,
    the allegations of which must be taken as true for disposition of
26  the instant motion.

2

1  an accounting or disbursement from First Bank.   FAC ¶ 26.

2       Pending before the court are First Bank's motions to dismiss,

3  which seek to dismiss the claims for conversion, breach of

4  fiduciary duty, subrogation, and declaratory relief.[2]  Defendant

5  does not seek dismissal of the breach of contract claim.  Plaintiff

6  has also abandoned its initial claim for punitive damages in the

7  first amended complaint.

8                           **II. Standard**

9       In order to survive a motion to dismiss for failure to state

10  a claim, plaintiffs must allege "enough facts to state a claim to

11  relief that is plausible on its face." Bell Atlantic Corp. v.

12  Twombly, -- U.S. --, 127 S. Ct. 1955, 1974 (2007).   While a

13  complaint need not plead "detailed factual allegations," the

14  factual allegations it does include "must be enough to raise a

15  right to relief above the speculative level." Id. at 1964-65.

16       The Supreme Court recently held that Federal Rule of Civil

17  Procedure 8(a)(2) requires a "showing" that the plaintiff is

18  entitled to relief, "rather than a blanket assertion" of

19  entitlement to relief. Id. at 1965 n.3.  Though such assertions

20  may provide a defendant with the requisite "fair notice" of the

21  nature of a plaintiff's claim, the Court opined that only factual

22  allegations can clarify the "grounds" on which that claim rests.

23  Id. "The pleading must contain something more. . . than . . . a

24  _____

25       [2] After the first motion to dismiss was filed, plaintiff added
a claim for subrogation.  Defendant then filed a second motion to
26  dismiss directed toward the subrogation claim.

1  statement of facts that merely creates a suspicion [of] a legally

2  cognizable right of action." Id. at 1965, quoting 5 C. Wright &

3  A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

4  ed. 2004).[3]

5      On a motion to dismiss, the allegations of the complaint must

6  be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

7  The court is bound to give the plaintiff the benefit of every

8  reasonable inference to be drawn from the "well-pleaded"

9  allegations of the complaint. See Retail Clerks Int'l Ass'n v.

10 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).   In general, the

11 complaint is construed favorably to the pleader. See Scheuer v.

12 Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

13 Harlow v. Fitzgerald, 457 U.S. 800 (1982). Nevertheless, the court

14 does not accept as true unreasonable inferences or conclusory legal

15 allegations cast in the form of factual allegations. W. Mining

16 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. Analysis

**A. Conversion**

19     A cause of action for conversion requires "(1) the plaintiff's

20 ownership or right to possession of the property; (2) the

21 defendant's conversion by a wrongful act or disposition of property

22 rights; and (3) damages." Burlesci v. Petersen, 68 Cal. App. 4th

---

[3]  The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

1062, 1066 (1998).

A generalized claim for money is not actionable as conversion. Vu v. Cal. Commerce Club, 58 Cal. App. 4th 229, 235 (1997); see also Farmers Ins. Exch. v. Zerin, 53 Cal. App. 4th 445, 452 (1997) ("a mere contractual right of payment, without more, will not suffice"); accord In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999). If, however, "there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment," a cause of action for conversion exists. Burlesci, 68 Cal. App. 4th at 1066; see also Fischer v. Machado, 50 Cal. App. 4th 1069, 1072-73 (1996). In other words, "money can only be treated as specific property subject to being converted when it is 'identified as a specific thing.'" PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, & Shapiro, LLP, 150 Cal. App. 4th 384, 395 (2007) (quoting Baxter v. King, 81 Cal. App. 192, 194 (1927)). That said, it is not necessary that "each coin or bill be earmarked." Haigler v. Donnelly, 18 Cal. 2d 674, 681 (1941).

Here, First Bank argues that the "undisbursed balance of loan funds" sought by plaintiff, FAC ¶ 43, does not constitute a specific, identifiable sum because Baldwin Ranch was never entitled to receive the full amount of its loan in a lump sum. Instead, as noted in the set aside letter, Baldwin Ranch was only allowed to draw down funds periodically, subject to the satisfactory completion of work. FAC, Ex. 2 ("Lender will make disbursement from the set aside allocation from time to time upon the written

1   authorization of the Borrower . . . for construction of the bonded
2   improvements . . . but only after Lender is satisfied that the work
3   paid for has actually been performed."). Thus, First Bank reasons
4   that "[u]ntil these loan amounts are draw upon and actually
5   disbursed, there is nothing that specifically identifies the
6   undisbursed sums." Mot. at 13.

7       The argument is unavailing. The set aside letter provided
8   that First Bank would "allocate and set aside in the disbursement
9   budget the sum of not less than $7,759,521."[4] FAC, Ex. 2. That
10  fixed amount, less money already disbursed, constitutes the
11  "undisbursed balance of the loan funds" -- a sum that is both
12  specific and identifiable.

13      First Bank's argument appears to conflate its relationship to
14  Baldwin Ranch with its relationship to Gulf Insurance. But Gulf
15  Insurance's entitlement to the undisbursed funds is not contingent
16  upon the procedures for disbursements to Baldwin Ranch. Instead,
17  that entitlement is contingent upon only one condition: whether
18  Baldwin Ranch "fails to complete or pay for the improvement." FAC,
19  Ex. 2. As alleged in the complaint, that condition has been met,
20  and it therefore triggered Gulf Insurance's ownership interest in

21

22      [4] It is immaterial whether the funds at issue were in fact
23  segregated; otherwise, defendants could shield themselves from
    liability by simply commingling funds. Instead, the issue is
24  whether First Bank had an obligation to segregate the funds or to
    take similar action. Here, under the terms of the agreement, First
25  Bank agreed to "allocate and set aside" the funds, which indicates
    that they were not to be treated as any other funds in the bank's
26  possession, even if there was no express requirement of
    segregation.

1  the undisbursed funds.

2      The facts here are similar to those in <u>Travelers Casualty and</u>

3  <u>Surety Co. of America v. RBC Centura Bank</u>, No. 08-369 GEB/EFB, 2008

4  WL 1925017 (E.D. Cal. Apr. 28, 2008).  There, the surety on an

5  improvement bond sued the bank with which it had entered into a set

6  aside agreement.  As here, the set aside agreement provided that

7  if the borrower on the original loan (i.e., the developers of the

8  construction projects) "failed to complete or pay for the

9  [i]mprovements, then [the bank] would make available for

10  disbursement to Plaintiff the [ ] balance of the Set Aside Funds."

11  <u>Id.</u> at *1.  The borrower then defaulted, but the bank refused to

12  pay.  Under those facts, the court found that plaintiff had

13  sufficiently stated a cause of action for conversion.

14      Here, too, Gulf Insurance has sufficiently stated a cause of

15  action of conversion.  It has identified a specific sum of money

16  in which it has an alleged ownership interest -- not merely a

17  contractual right of payment.  Accordingly, the court denies the

18  motion to dismiss with respect to conversion.

19  **B. Breach of Fiduciary Duty**

20      The elements for a cause of action for breach of fiduciary

21  duty are the existence of a fiduciary duty, the breach of that

22  duty, and damages proximately caused by the breach.  <u>Mosier v. S.</u>

23  <u>Cal. Physicians Ins. Exch.</u>, 63 Cal. App. 4th 1022, 1044 (1998).

24  Whether a fiduciary duty exists is a question of law, whereas

25  whether a breach has occurred is a question of fact.  <u>Amtower v.</u>

26  <u>Photon Dynamics, Inc.</u>, 158 Cal. App. 4th 1582, 1599 (2008).

1    Here, First Bank argues that no fiduciary duty existed.  A
2  fiduciary duty can be created by agreement or by special
3  circumstances.  See Comm. on Children's Television, Inc. v. Gen.
4  Foods Corp., 35 Cal. 3d 197, 221 (1983) ("[B]efore a person can be
5  charged with a fiduciary obligation, he must either knowingly
6  undertake to act on behalf and for the benefit of another, or must
7  enter into a relationship which imposes that undertaking as a
8  matter of law.").  The bank argues that, at most, it owed a debt
9  to Gulf Insurance, just as it owes a debt to anyone who deposits
10 money into the bank.  It is well-settled that the mere act of
11 depositing money into a bank does not generally create fiduciary
12 relationship.  See Copesky v. Superior Court, 229 Cal. App. 3d 678,
13 692 (1991) ("[T]he relationship between a bank and its depositor
14 is *not* a fiduciary relationship, but that of debtor-creditor"); see
15 also Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 476 (1989)
16 ("A debt is not a trust and there is not a fiduciary relation
17 between debtor and creditor as such. . . . ") (internal quotation
18 marks omitted).

19    That said, it is also well-settled that an escrow agent owes
20 a fiduciary duty to the parties to the escrow.  Virtanen v.
21 O'Connell, 140 Cal. App. 4th 688, 702-03 (2006) ("[I]t is hard to
22 imagine how one can seriously dispute that an escrow holder owes
23 a fiduciary duty to the parties to the escrow, including the party
24 who has deposited property into the escrow.").  Although First Bank
25 was not an escrow agent as such, it could be argued that it
26 performed a similar function in that it was bound to deliver funds

8

1  to Gulf Insurance (at least upon a triggering event, i.e., Baldwin
2  Ranch's default of its obligations).

3      The court concludes, however, that the relationship between
4  First Bank and Gulf Insurance is not one that merits protection by
5  the law of fiduciaries.  It is noteworthy that the parties here are
6  two sophisticated businesses with substantial bargaining power.
7  See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 75 Cal. Rptr.
8  3d 333, 345 (2008).  Had the parties desired to enter into a
9  fiduciary relationship explicit, they could have expressly done so
10 in the set aside letter.  Further, while Gulf Insurance argues that
11 it lacks knowledge and control over the disbursement budget as
12 compared to First Bank, the balance of the disbursement budget can
13 be identified by verifying the amount of funds already received by
14 Baldwin Ranch.

15     Fiduciary obligations "generally come into play when one
16 party's vulnerability is so substantial as to give rise to
17 equitable concerns underlying the protection afforded by the law
18 governing fiduciaries." Id.  Here, the court cannot conclude that
19 Gulf Insurance's vulnerability in its relationship with First Bank
20 was so substantial to warrant such protection.  See Reyes v.
21 Atlantic Richfield Co., 12 F.3d 1464, 1472 (9th Cir. 1993)
22 (refusing to impose fiduciary duty where there was nothing to
23 indicate that the relationship was "anything other than an
24 arms-length business transaction"); First Citizens Fed. Sav. & Loan
25 Ass'n v. Worthen Bank and Trust Co., N.A., 919 F.2d 510, 514 (9th
26 Cir. 1990) ("Banks and savings institutions engaged in commercial

transactions normally deal with one another at arm's length and not as fiduciaries."); <u>Copesky</u>, 229 Cal. App. 3d at 691.  Accordingly, the court dismisses the breach of fiduciary duty claim.

**C. Subrogation**

Gulf Insurance also alleges a claim for subrogation on behalf of subcontractors and other labor, equipment, and material suppliers who worked on the improvements.  "In general terms, subrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right.  It is a derivative right, acquired by satisfaction of the loss or claim that a third party has against another."  <u>In re Hamada</u>, 291 F.3d 645, 649 (9th Cir. 2002).  A subrogation claim requires that the plaintiff (1) have paid a debt owed to the subrogee in order to protect plaintiff's own interest, (2) not have acted as a volunteer, (3) not be primarily liable for debt, (4) have paid the entire debt, and (5) show that subrogation would not work an injustice to the rights of others.  <u>Id.</u> at 651.

Because of the derivative nature of subrogation, Gulf Insurance must first allege facts sufficient to support a finding that the subcontractors had a valid claim against First Bank.  As Gulf Insurance notes, a construction lender such as First Bank may be liable to a subcontractor if, for example, a stop notice or mechanics' lien is filed.  <u>See</u> <u>Nat'l Technican Systems v. Commercial Contractors, Inc.</u>, 89 Cal. App. 3d 1000, 1006 (2001) ("A 'stop notice' is a remedy to reach unexpended construction funds in the hands of the owner or lender, is available on both public

1  and private works, and may be served by a claimant other than an

2  original contractor."); N. Bay Constr., Inc. v. City of Petaluma,

3  143 Cal. App. 4th 552, 555 (2006) (mechanics' lien permits those

4  who have provided labor or materials in connection with property

5  to impose lien on property). Here, however, there is no allegation

6  that any such stop notice or mechanics' lien was in fact utilized.

7  Because it is unclear whether or not plaintiff could in fact make

8  such an allegation, the claim is dismissed with leave to amend if

9  plaintiff can do so in good faith.

10       Assuming that plaintiff is able to cure this defect, it must

11  also allege with greater specificity which subcontractors' rights

12  it seeks to enforce. At present, the complaint simply speaks in

13  generalities about how Gulf Insurance has expended substantial sums

14  to satisfy claims made by unnamed "subcontractors and/or other

15  labor, equipment, or material suppliers who performed work and/or

16  provided materials to the improvements." FAC ¶ 59. While

17  plaintiff need not allege a precise accounting of all such claims,

18  it must at least allege the parties on whose behalf the subrogation

19  claim is asserted.

20       Finally, First Bank argues that plaintiff has not alleged that

21  the debts were paid in full. Gulf Insurance responds, however,

22  that it received multiple claims by multiple subcontractors -- the

23  satisfaction of any of which entitles Gulf to subrogation

24  (assuming, of course, that the other requirements discussed above

25  are met). Because each separate claim may be subrogated, the court

26  finds that plaintiff has sufficiently alleged the requirement that

1 the debts at issue were paid in full.

2 **D. Declaratory Relief**

3      Finally, defendant argues that plaintiff cannot plead a claim

4 for declaratory relief.  Under California law, declaratory relief

5 only "operates prospectively, and not merely for the redress of

6 past wrongs."  <u>Babb v. Superior Court</u>, 3 Cal. 3d 841, 848 (1971)

7 (quoting <u>Travers v. Louden</u>, 254 Cal. App. 2d 926, 931 (1967)); <u>see</u>

8 <u>also</u> <u>Roberts v. Los Angeles County Bar Ass'n</u>, 105 Cal. App. 4th

9 604, 618 (2003).  "The purpose of a judicial declaration of rights

10 in advance of an actual tortious incident is to enable the parties

11 to shape their conduct so as to avoid a breach."  <u>Babb</u>, 3 Cal. 3d

12 at 848.  At least with respect to the cause of action for breach

13 of contract, however, there exists a fully matured cause of action

14 for money damages.  <u>See</u> <u>Canova v. Trustees of Imperial Irrigation</u>

15 <u>Dist. Employee Pension Plan</u>, 150 Cal. App. 4th 1487, 1497 (2007)

16 ("Where, as here, a party has a fully matured cause of action for

17 money, the party must seek the remedy of damages, and not pursue

18 a declaratory relief claim.").  Accordingly, declaratory relief

19 would be redundant for purposes of the breach of contract claim.

20 **IV. Conclusion**

21      The motion to dismiss is granted in part and denied in part.

22 Plaintiff is granted ten days leave to amend.

23      IT IS SO ORDERED.

24      DATED:  June 4, 2008.

25

LAWRENCE K. KARLTON
SENIOR JUDGE
26 UNITED STATES DISTRICT COURT