UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GULF INSURANCE COMPANY,

         Plaintiff,

    v.

FIRST BANK and DOES 1
through 50, inclusive,

         Defendants.
_____/

NO. CIV. S-08-209 LKK/JFM

O R D E R

Plaintiff Gulf Insurance Company ("Gulf") acted as a surety for third party Baldwin Ranch L.P., for construction of a subdivision. Defendant First Bank entered into an agreement with plaintiff to set aside funds to back bonds plaintiff issued on behalf of Baldwin Ranch. Pending before the court are the parties' cross-motions for summary judgment on the three causes of action alleged in plaintiff's Third Amended Complaint. The court resolves the motions on the papers and after oral argument.

////

////

////

## I. FACTS[1]

The relevant facts are, for the most part, undisputed by either party. Third party Baldwin Ranch planned the construction of a new residential community in Nevada County, California. Baldwin Ranch had obtained a construction loan from defendant First Bank in June 2001. Specifically, this loan was to finance "Phase II" of the subdivision development, which included "engineering and construction of residential lots and related infrastructure." Decl. of Chad Fralick In Support of First Bank's Motion for Summ. J. ("Fralick Decl.") ¶ 3. First Bank disbursed this loan in increments as Baldwin Ranch's construction proceeded.

The county required that Baldwin Ranch deposit with it surety

---

[1] Each party has objected to various items of evidence offered by the other. The court SUSTAINS plaintiff's objection to paragraph 18 of the Declaration of Chad Fralick offered in support of First Bank's motion for summary judgment, on the grounds that there is no apparent foundation for the declaration. See Fed. R. of Evid. 602. Many of the remaining objections by both parties relate to evidence not relevant to the disposition of the instant motion. To the extent that they are relevant, they are OVERRULED.

Plaintiff requests the court take judicial notice of several documents on the docket of this case (its Third Amended Complaint, defendant's answer, and the court's June 4, 2008 order). A court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably questioned. Fed. R. Evid. 201(b). A court shall take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed. R. Evid. 210(d).

Here, these documents are public documents whose contents the court is able to accurately and readily determine. Plaintiff has complied with Federal Rule of Evidence 201(d) by requesting judicial notice and supplying the court with a copy of the applicable sections of them. Therefore, the court takes judicial notice of them.

bonds to guarantee completion of certain aspects of the construction, including all labor and materials claims. Plaintiff Gulf agreed to act as Baldwin Ranch's surety. As a condition of issuing the bonds, Gulf required Baldwin Ranch to obtain a set-aside letter from First Bank. Although the parties dispute the precise characterization of a "set-aside letter," its general purpose is as a statement by the lender that a certain amount of its loan is allocated to the completion of the work required by the bonded government entity. See Decl. of Debra Kramer In Support of First Bank's Motion for Summ. J. ("Kramer Decl.") ¶ 12.

Upon Baldwin Ranch's request, First Bank issued the set-aside letter to Gulf on September 25, 2002. The letter provides,

> In consideration of the execution by Gulf Insurance Company ("Surety") of bonds in the amount of $7,759,521 on behalf of Borrower [Baldwin Ranch] guaranteeing Nevada County ("Obligee") the completion of the improvements, and as a direct inducement to Surety to execute such bonds as Surety and in reliance on the Borrower's representation to Lender [First Bank] of the estimated cost of the improvements, Lender will allocate and set aside in the disbursement budget the sum of not less than $7,759,521 for the improvement guaranteed to Obligee under the terms of the Development Agreement and secured by the referenced bond.

Decl. of Steven Pand In Support of Gulf Insurance's Motion for Summ. J. ("Pand Decl.") Ex. B. The letter also acknowledged that First Bank had already disbursed to Baldwin Ranch $3,932,420.08 for improvements covered by the bonds.

The letter further provided that if Baldwin Ranch failed to complete or pay for improvements that were the subject of the First Bank loan, First Bank would disburse the remaining balance to Gulf.

3

It also stated that "the amount of the above allocation [$7,759,521] has been determined pursuant to the Borrower's cost breakdown and Lender is not in a position to guarantee that the estimates are correct or that subsequent events will not increase the actual costs and assumes no liability should the allocation prove incorrect." Id.

Finally, the letter provided that it was "an irrevocable commitment of funds which is not subject to recall" and that First Bank's "liability . . . shall terminate on the full disbursement of the funds set aside or after the bonds are released by the Surety." Id. In reliance on this letter, Gulf issued to the county several surety bonds on Baldwin Ranch's behalf.

The managing partner of Baldwin Ranch has declared that in June 2003, Baldwin Ranch refinanced the First Bank loan with another entity, Metwest Mortgage Services, Inc. Fralick Decl. ¶ 10. According to him, the Metwest loan financed the same Phase II construction covered by the First Bank loan. Id. Upon the closing of the Metwest loan, Baldwin Ranch repaid the First Bank loan and the deed of trust on the property securing the loan was conveyed from First Bank to Baldwin Ranch. At this time, First Bank had disbursed $5,581,900 to Baldwin Ranch. Both parties agree that First Bank, through its own error, failed to notify Gulf of the extinguishing of its loan to Baldwin Ranch and reconveyance of the deed of trust. It is undisputed that Gulf never released First Bank of its obligations under the set-aside agreement.

Over the course of its relationship with Baldwin Ranch,

Metwest disbursed $4,631,805 to it. The managing partner of Baldwin Ranch has declared that these disbursements went to improvements bonded by Gulf.[2] Id. ¶¶ 12-13. In December 2004, Baldwin Ranch refinanced its loan with Metwest with Owens Mortgage Investment Fund. Owens disbursed $410,005, which has been asserted to have paid for improvements bonded by Gulf.

Gulf disputes several of the facts surrounding the Metwest loan, Owens loan, and First Bank disbursements as asserting improper opinion and legal conclusion. Gulf has also tendered the declaration of its bond claims counsel, which states, "Neither First Bank, nor any other lender, paid Gulf the undisbursed balance of the Set Aside Funds to complete the Improvements." Pand Decl. ¶ 32.

Baldwin Ranch eventually defaulted on certain of its performance and payment obligations. In May 2007, one of Baldwin Ranch's contractors made a claim against Gulf for $1,538,662.36 for work performed on the project. In September 2007, another contractor made a similar claim against Gulf for $18,367.29. The county also demanded that Gulf complete the bonded improvements on the construction project; Gulf has tendered some evidence that this claim is approximately $2,500,000. Pand Decl. ¶ 18. Gulf has paid a total of $252,358.36 on these claims. It has also retained consultants "to assist with the resolution of all claims asserted

---

[2] He has supplemented his declaration with a spreadsheet of construction costs that he asserts were paid with funds from Metwest disbursements, which covered "improvements" bonded by Gulf. Fralick Decl. ¶¶ 12-13, Ex. 3.

against the Baldwin Ranch Bonds." Id. ¶ 22-23.

On September 26, 2007, Gulf requested that First Bank provide a complete and detailed accounting of its disbursements of the set-aside funds and requested that First Bank disburse to it the remaining funds. At that time, First Bank informed Gulf of the refinancing and that at that time, it terminated the set-aside.

Gulf commenced this suit against First Bank on January 28, 2008. After the court granted in part First Bank's motion to dismiss on June 4, 2008, Gulf filed a Third Amended complaint, which is the operative complaint. In it, it alleges causes of action for breach of contract, conversion, and declaratory relief.

On May 21, 2008, First Bank filed a third-party complaint against Baldwin Ranch, which has been answered.

**II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56**

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

6

R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986); <u>see also</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); <u>Secor Ltd.</u>, 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); <u>see also</u> <u>First Nat'l Bank</u>, 391 U.S. at 289. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. <u>Matsushita</u>, 475 U.S. at 587-88 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (<u>per</u> <u>curiam</u>)); <u>County of Tuolumme v. Sonora Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th Cir. 2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. See <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

### III. ANALYSIS

The parties cross-move for summary judgment on plaintiff's

three causes of action, for breach of contract, conversion, and declaratory relief. As explained below, the court grants defendant's motion only as to plaintiff's claim for declaratory relief and grants plaintiff's motion on its causes of action for breach of contract and conversion.

**A.  Breach of Contract**

Gulf alleges that First Bank breached the contract that was formed between them through the set-aside agreement by failing to disburse to it the remainder of the funds identified in the agreement. First Bank argues that, even if it did breach the agreement in this manner, Gulf did not suffer damages because more than the total amount at issue in the set aside agreement was disbursed to Baldwin Ranch by First Bank, Metwest, and Owens combined. The court cannot agree.

Under California law,[3] to succeed on a claim for breach of contract, the plaintiff must show that (1) there was a valid contract, (2) plaintiff performed or was excused for not performing, (3) defendant breached the agreement, and (4) this breach caused plaintiff's damages. Reichart v. Gen. Ins. Co., 68 Cal. 2d 822, 830 (1968). Defendant acknowledges that the first three elements have been met, although it argues in its opposition to plaintiff's motion that it substantially performed its obligations under the contract and therefore its conduct does not constitute "breach." See Def.'s Combined Reply in Support of Its

---

[3] The parties appear not to dispute that California law applies.

Mot. for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J. at 7-8; see generally Def.'s Mot. for Summ. J. at 8-11. The court disagrees.

The doctrine of substantial performance provides that a party is deemed not to have breached a contract if its conduct was a "trivial and innocent" departure from the contract's requirements. Medico-Dental Building Co. of Los Angeles v. Horton & Converse, 21 Cal. 2d 411, 433-34 (1942), citing Jacob & Young v. Kent, 230 N.Y. 239, 241 (1921) (substantial performance where builder used a different brand of pipe in constructing a home than the brand specified in the contract, because the brand used was the same quality of that specified). This doctrine is inapplicable here, as defendant's conduct conflicted with the central purpose of the contract, which was for it to set aside a certain amount to fund the bonded construction and that the contract was irrevocable without plaintiff's consent. There is no dispute that defendant failed to do this, when it released the deed on the property guaranteeing the Baldwin Ranch loan upon refinancing. The refinanced loans were not the "substitution of equivalents" discussed in Jacob & Youngs, 230 N.Y. at 241, because they did not contain the same set-aside guarantees.

Elsewhere in its briefing, defendant acknowledges that its argument is properly characterized as asserting that plaintiff was not damaged, not that defendant did not breach the contract. See Def.'s Combined Reply in Support of Its Mot. for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J. at 1, 25. The California Civil Code provides that damages are recoverable by "every person who suffers

9

detriment from the unlawful act or omission of another." Cal. Civ. Code § 3281. For a breach of contract, the damages typically are "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby. . . ." Cal. Civ. Code § 3300. Similarly, a plaintiff may not recover "a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides." § 3358. In other words, "[a] breach of contract is not actionable without damage." Bramalea Cal., Inc. v. Reliable Interiors, Inc., 119 Cal. App. 4th 468, 473 (2004); see also Patent Scaffolding Co. v. William Simpson Constr. Co., 256 Cal. App. 2d 506 (1967) Whipley v. McKune, 12 Cal. 352 (1859) ("An act, however erroneous, which does no injury to a party, cannot be the subject to a legal complaint on his part."). This is true because contract remedies have the purpose of putting the non-breaching party in the position he would have been had the contract been fully performed. Plut v. Fireman's Fund Ins. Co., 85 Cal. App. 4th 98, 108 (2000).

Here, there is no question that First Bank breached the terms of its set-aside agreement with Gulf. The agreement required First Bank to "allocate and set aside" $7,759,521 that would either be disbursed to Baldwin Ranch for the bonded construction or would be disbursed to Gulf in the event of Baldwin Ranch's failure to complete or pay for the improvements. Pand Decl. Exh. B. It is undisputed that when Baldwin Ranch failed to complete or pay for the bonded construction, First Bank did not disburse the credit to Gulf. The dispositive question, therefore, is whether plaintiff

suffered any harm from this breach. See Bramalea Cal., 119 Cal. App. 4th at 473.

The plain language of a contract is controlling. Cal. Civ. Code § 1638. The set-aside agreement contains no provision specifically addressing what the parties would do if Baldwin Ranch sought to refinance the First Bank loan. Nonetheless, the plain words of the contract appear to address the issue, if not directly, than by necessary implication.

Through the set-aside agreement, plaintiff bargained for and received defendant's agreement to set aside a certain amount of funds. This obligation was irrevocable and, similarly, the agreement contained no provision allowing for defendant's obligations to be passed on to a subsequent lender. As the parties acknowledged at oral argument, although the amount of the set-aside was determined by cost estimates of the construction project, Baldwin Ranch was not required to drawn down any of the set-aside funds to pay for bonded improvements. In other words, the fact that Baldwin Ranch may have obtained other sources of funding could not operate to discharge defendant's obligations under the set-aside agreement.

Defendant argues that the obvious purpose of the irrevocability provision was to ensure that the total amount of the set-aside funds were made available to Baldwin Ranch, and that this was plainly plaintiff's intent in including this provision in the set-aside agreement. As such, defendant argues, plaintiff received the benefit of its bargain with defendant when Metwest and Owens

ultimately disbursed the same amount (and more) to Baldwin Ranch. See generally Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist., 34 Cal. 4th 960, 971-73 (2004).

The court cannot agree. The language of the set-aside agreement is plain. See Cal. Civ. Code § 1639. Plaintiff sought to have defendant set-aside a certain amount of funds for disbursement to Baldwin Ranch or to plaintiff. That was its intent. The agreement further provided, in plain and direct language, that the set-aside was irrevocable. These two provisions taken together demonstrate that the plaintiff's intent in executing the set-aside agreement was to require defendant to set aside a certain amount of funds until they were either fully disbursed to Baldwin Ranch or plaintiff, and that defendant could not transfer its responsibility to another entity without release by the plaintiff. There is no ambiguity in the language of the agreement in this regard. Because defendant's conduct frustrated the plain purpose of plaintiff in entering into the agreement, it is not the case that plaintiff received the benefit of its bargain through the subsequent loans by Metwest and Owens, as defendant argues. Defendant's position would have the court essentially ignore the irrevocability provision in the agreement, which the court may not do. See Cal. Civ. Code § 1641. Through defendant's release of the deed of trust securing the loan prior to its full disbursement to either Baldwin Ranch or plaintiff, defendant deprived plaintiff of the irrevocable guarantee of set-aside, for which it had bargained, and thus caused damage to plaintiff. For this reason, plaintiff's

12

motion must be granted and defendant's denied on this cause of action.[4]

Although not dispositive to this holding, the court also remains unpersuaded that the Metwest and Owens loans may properly be characterized as refinances of the original loan. The only direct evidence on this point is the declaration of Chad Fralick, Baldwin Ranch's managing partner. His statements, however, are not supported by other facts on the record. First, he buttressed his declaration with reference to a portion of a spreadsheet titled "Phase 2 Hard Costs," declaring that these costs were paid with disbursements by Metwest and were the types of improvements bonded by plaintiff. Fralick Decl. ¶ 13. It is frankly impossible to discern from the evidence tendered to the court whether this latter contention is accurate. The set-aside letter only describes vaguely what portions of Baldwin Ranch's construction were bonded by plaintiff. See id. Ex. 2 at 1 ("First Bank . . . has arranged or is arranging financing for Baldwin Ranch . . ., one of the purposes of which will be to finance, among other things, off-site and on-site improvements ("Improvements") for a 114 lot subdivision near Auburn, CA."). Additionally, the spreadsheet tendered as part of the Fralick declaration indicates that Phase 2 "hard costs" were paid with Metwest funds, while other evidence tendered indicates that the First Bank loan covered "soft costs" of Phase 2

---

[4] It is plain speculation to try, after the fact, to determine what plaintiff would have done had it been timely notified of the intended refinancing of Baldwin's loan.

construction. Kramer Decl. ¶ 8. The court simply cannot conclude, based on the evidence tendered, that as a matter of law the Metwest loan was used to finance the "Improvements" bonded by plaintiff.

Furthermore, even if Metwest financed the type of improvements covered by the First Bank loan, the court cannot conclude, based on the evidence tendered, that Metwest's loan may accurately be characterized as a refinance of the First Bank loan. It is undisputed that First Bank disbursed to Baldwin Ranch $5,581,900.69 of the $7,759,521 set aside pursuant to its agreement with plaintiff, leaving a difference of $2,177,620.31. It is also undisputed that Metwest disbursed a total of $4,631,805 to Baldwin Ranch. No evidence has been tendered, aside from the few statements by Chad Fralick, of the terms of the Metwest loan. The Metwest loan, however, was more than twice the amount of the undisbursed First Bank loan. Thus it seems inappropriate to characterize the Metwest loan simply as a refinancing of the First Bank loan. This is particularly critical, as defendant's argument hinges on its contention that through Metwest, and eventually Owens, plaintiff received the benefit of its bargain with defendant.[5]

---

[5] Plaintiff does not move for summary judgment on the issue of the amount of damages to be awarded for defendant's breach of contract. See Pl.'s Mot. for Summ. J. at 15. The court therefore need not reach the question of whether plaintiff may recover for the costs of claims against it and for investigating those claims, which may or may not be considered special or consequential damages. See, e.g., Lewis Jorge Constr. Mgmt., 34 Cal. 4th at 967-69.

Because the court awards plaintiff damages for conversion, the court notes that under California law, it would appear plaintiff is prohibited from being awarded the same damages for breach of contract. See Plut, 85 Cal. App. 4th at 107-11 (holding that the

14

**B.   Conversion**

In its Third Amended Complaint, plaintiff alleges that defendant committed the tort of conversion by failing to disburse the full amount set forth in the set-aside agreement. Plaintiff seeks summary judgment on this cause of action. Defendant cross-moves for summary judgment on the grounds that defendant suffered no damages from any wrongful conversion and that the cause of action is barred by the statute of limitations.

    **1.   Statute of Limitations**

The parties agree that the statute of limitations for this cause of action is three years, see Cal. Civ. Code § 338(c), but disagree on at what point the limitations period began to run. Plaintiff contends that the period began to run when it was entitled to possession of the funds. Defendant argues that the period began to run when the wrongful taking occurred, i.e., when Baldwin Ranch refinanced the First Bank loan and First Bank reconveyed the deed of trust securing the loan. The court agrees with plaintiff.

Under California law, a conversion action accrues when the plaintiff obtains an immediate right to possession of the item in question. See Bastanchry v. Times-Mirror, Co., 68 Cal. App. 2d 217, 236 (1945). Thus, for example, a lien constitutes a property interest that may be converted, but the claim does not accrue until the obligee has become entitled to immediate possession of the

---

collateral source rule does not apply to breach of contract actions).

15

property at issue. <u>Hartford Financial Corp. v. Burns</u>, 96 Cal. App. 3d 591, 598 (1979); <u>Imperial Valley Co. v. Globe Grain & Milling Co.</u>, 187 Cal. 352 (1921); <u>Weiss v. Marcus</u>, 51 Cal. App. 3d 590 (1975). While defendant is correct, that defendant's wrongful act is also an essential element of the claim, the statute of limitations on a claim cannot begin to run until all of its factual predicates have occurred.

Here, First Bank reconveyed the deed of trust on June 3, 2003. Kramer Decl. ¶ 18. However, Gulf did not acquire a right to immediately possess the undisbursed balance until Baldwin Ranch "fail[ed] to complete or pay for the Improvements." Pand Decl. Ex. B. It is undisputed that the first claim against Gulf was made on May 23, 2007 for Baldwin Ranch's failure to pay for bonded improvements. In this claims letter, the claimant stated that Baldwin Ranch had not paid it as of May 1, 2007. Pand Decl. Ex. M. Therefore, that was the earliest date on which statute of limitations for the claim of conversion began to run, under the terms of the set-aside agreement. Accordingly, plaintiff's conversion claim is not time-barred.

### 2. Elements of Conversion

In general terms, conversion is the "wrongful exercise of dominion over the property of another." <u>Spates v. Dameron Hosp. Ass'n</u>, 144 Cal. App. 4th 208, 221 (2003) (internal citations omitted). In order to prevail on a claim for conversion, a plaintiff must prove that (1) the plaintiff had ownership or a right to possession of property at the time of the conversion, (2)

the defendant converted this property through its wrongful act or disposition of the property rights, and (3) that plaintiff suffered damages. Id.

First, despite the defendant's arguments on this point in the instant motion, the court had already ruled that under California law, set-aside funds can be subject to conversion. See Order, June 4, 2008, at 5-6. This is an exception to the general rule that a claim for money cannot be the subject of a conversion claim. Id. Additionally, plaintiff's ownership interest in the funds was triggered upon Baldwin Ranch's failure to complete or pay for the construction covered by plaintiff's bonds. Id. Accordingly, plaintiff has met the first element of the conversion action.

Second, defendant's reconveyance of the deed of trust securing the loan prior to it being fully disbursed to plaintiff or Baldwin Ranch constituted a wrongful act, as it operated to interfere with plaintiff's ownership interests in the funds. See, e.g., Naftzger v. Am. Numismatic Soc'y, 42 Cal. App. 4th 421, 428-29 (1996). Defendant appears not to dispute that this conduct constitutes a wrongful act, sufficient to satisfy the second element of a conversion action. See Def.'s Mot. for Summ. J. at 14-15; Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 18-20.

Finally, for the reasons discussed in relation to the first cause of action, plaintiff did suffer damages from the conversion. It is undisputed that there remained $2,177,620.31 undisbursed to Baldwin Ranch or plaintiff. Plaintiff seeks this amount plus interest, see Pl.'s Mot. for Summ. J. at 23, which is by statute

presumed to be the appropriate measure of damages for a claim of conversion. Cal. Civ. Code § 3336. In California, the rate of interest is presumed to be seven percent per annum, unless there is a contrary statute. Cal. Const. art. XV § 1. In conversion action, seven percent is the proper measure of interest. Irving Nelkin & Co. v. South Beverley Hills Wilshire Jewelry & Loan, 129 Cal. App. 4th 692 (2005). Interest accrues from the time of the wrongful conversion until the date of an adjudication that plaintiff is entitled to the possession of the property. Id. at 704. In this case, interest runs from May 23, 2007 to the date of this order.

**3.  Declaratory Relief**

In its third cause of action, plaintiff seeks declaratory relief as to the parties' obligations under the set-aside agreement. In its motion, plaintiff specifies that it seeks a declaration under California Code of Civil Procedure § 1060 that (1) First Bank has an obligation to disburse the undisbursed set-aside funds to Gulf, (2) that the set-aside agreement is irrevocable, and that (3) Gulf does not have any repayment obligations to First Bank with respect to the set-aside funds. Pl.'s Mot. for Summ. J. at 17. The court concludes that a declaratory judgment is not merited.

Under the California Code of Civil Procedure § 1060, a party may seek a declaration of the construction or validity of a contract in which it has an interest. The declaration "may" issue before there has been any breach of the contract. Cal. Code Civ.

Proc. § 1060. The court may decline to issue the declaration if it finds it would be "not necessary or proper at the time under all the circumstances." Id. § 1061. The purpose of the statute is to resolve uncertainties or controversies that may otherwise result in litigation. See, e.g., County of San Diego v. State, 164 Cal. App. 4th 580 (2008); Roberts v. Reynolds, 212 Cal. App. 2d 818 (1963); Coruccini v. Lambert, 113 Cal. App. 2d 486 (1952).

As the court explained in its June 2008 order, under California law, declaratory relief under Code of Civil Procedure § 1060 is not appropriate where the plaintiff has also brought an action for breach of contract. Order, June, 4, 2008 at 12, citing Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan, 150 Cal. App. 4th 1487, 1497 (2007), Roberts v. Los Angeles County Bar Ass'n, 105 Cal. App. 4th 604, 618 (2003), and Babb v. Superior Court, 3 Cal. 3d 841, 848 (1971). The first two issues for which plaintiff seeks declaratory relief -- regarding the nature of First Bank's obligations under the set-aside agreement and whether the agreement is irrevokable -- appear to be redundant to the issues resolved in the breach of contract cause of action. Moreover, as the court has observed, First Bank appears not to dispute that the set-aside agreement is irrevokable, and thus this issue is not the type for which declaratory judgment is appropriate. See Cal. Code Civ. Proc. §§ 1060, 1061.

Plaintiff has also tendered no evidence to suggest that a controversy exists as to its reimbursement obligations to defendant under the set-aside agreement, which may be resolved through a

declaratory judgment. It appears that plaintiff views this as a present controversy because the claims against it by the county are for a yet-undetermined amount and the plaintiff seeks to know whether it would be required to reimburse defendant for amounts in excess of the claims. See Pl.'s Reply In Support of Motion for Summ. J. at 15-16. Because, however, the question of the amount of damages for breach of contract to which plaintiff is entitled remains unresolved, no such declaration is yet necessary. See Cal. Code Civ. Proc. §§ 1060, 1061.

### IV. CONCLUSION

For the reasons herein, the court ORDERS as follows:

1. Plaintiff's motion for summary judgment is GRANTED as to its first and second causes of action and DENIED as to its claim for declaratory relief. On its cause of action for conversion, plaintiff is awarded damages of $2,177,620.31 plus interest at the rate of seven (7) percent per annum from May 23, 2007 to the date of this order.

2. Defendant's motion for summary judgment is GRANTED as to plaintiff's claim for declaratory relief and DENIED as to plaintiff's remaining claims.

IT IS SO ORDERED.

DATED: April 10, 2009.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT